FILED

SEP - 7 2001

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11   MARIA GUADALUPE CARRASCO,
                                   No. Civ. S-00-1968 WBS JFM
12           Plaintiff,

13       v.                        MEMORANDUM AND ORDER

14   CITY OF VALLEJO, et al.,

15           Defendants.

16                          ----oo0oo----

17           This is a civil rights action arising out of

18   defendants' conduct during plaintiff's arrest in 1998.  The

19   complaint contains sixteen causes of action, including three

20   claims under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983,

21   and thirteen claims under California law.  Defendants move for

22   summary judgment.

23   I.  Factual Background

24           The following facts are based on plaintiff's version of

25   the events as stated in her declaration:

26           On June 27, 1998, officers of the Vallejo Police

27   Department responded to a call concerning a potential fight

28   between two male juveniles outside plaintiff's home.  At some

1

42

1  point, Officer Kenny Park grabbed plaintiff's son and threw him
2  to the ground in a violent manner.  (Carrasco Decl., ¶¶ 4-5, 13).
3  Then, plaintiff saw Corporal Dane Neilson strike her son with his
4  baton three or four times.  (Carrasco Decl., ¶ 6).  Plaintiff
5  became concerned for the safety of her son and "ran across the
6  street to try to stop the officers" from "hurting him."
7  (Carrasco Decl., ¶¶ 7-8).  When they ignored her, she "grabbed an
8  officer's shoulder area."  At that moment, Officer T. Lee "yanked
9  [plaintiff] by the neck and threw [her] to the ground and held
10  [her] to the ground by placing his knee on [her] neck."
11  (Carrasco Decl., ¶¶ 10-11).

12      Defendants arrested plaintiff and searched her house
13  while she sat in custody in a police car.  Plaintiff's complaint
14  alleges violations of the Fourth Amendment, based on excessive
15  force and an unreasonable search.  Defendants move for summary
16  judgment regarding plaintiff's federal claims on the basis of
17  qualified immunity.  Defendants also argue that the City of
18  Vallejo cannot be held liable for plaintiff's claims, that
19  defendant Sergeant Eric Mortenson ("Sergeant Mortenson") cannot
20  be held liable for failure to supervise the other officers, and
21  that plaintiff's state causes of action are insufficient as a
22  matter of law.[1]
23  ///
24  ///
25  ///
26
27      [1]    Defendants reply brief argues for the dismissal of
Police Chief Robert W. Nichelini.  The court does not consider
28  this argument because it was not included in defendants' motion
before the court.

2

1  II.   Discussion

2          The court must grant summary judgment to a moving party
3  "if the pleadings, depositions, answers to interrogatories, and
4  admissions on file, together with the affidavits, if any, show
5  that there is no genuine issue as to any material fact and that
6  the moving party is entitled to judgment as a matter of law."
7  Fed. R. Civ. P. 56(c).   The party adverse to a motion for summary
8  judgment may not simply deny generally the pleadings of the
9  movant; the adverse party must designate "specific facts showing
10 that there is a genuine issue for trial."   Fed. R. Civ. P. 56(e);
11 see Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

12     A.   Qualified Immunity

13         Defendants are entitled to qualified immunity if their
14 conduct did not violate plaintiff's clearly established rights,
15 or if defendants could have reasonably believed that their
16 conduct was lawful.   See Orozco v. County of Yolo, 814 F. Supp.
17 885, 895 (E.D. Cal. 1993).   Defendants bear the burden of
18 establishing qualified immunity.   See Crawford-El v. Britton, 523
19 U.S. 574, 641 (1998).

20         The United States Supreme Court recently articulated
21 the following test for determining qualified immunity.   As a
22 threshold question, the court must ask: "Taken in the light most
23 favorable to the party asserting the injury, do the facts alleged
24 show the officer's conduct violated a constitutional right?"
25 Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001).   If the answer is
26 affirmative, the court must next consider "whether it would be
27 clear to a reasonable officer that his conduct was unlawful in
28 the situation he confronted."   Id. at 2156.   If the answer is

3

1 negative, the officer is entitled to qualified immunity.

2       The mechanics of Saucier's application involves the
3 determination of both evidentiary facts and ultimate facts.
4 Evidentiary facts consist of the testimony of witnesses about
5 what those witnesses saw, heard, or did, and are the premises
6 upon which the determinations of ultimate facts are based.  See
7 Black's Law Dictionary (7th Ed. 1999).  Ultimate facts are those
8 that are essential to a claim or defense, such as negligence or
9 the reasonableness of a person's conduct.  See id.; H. Hackfeld &
10 Co. v. United States, 197 U.S. 442, 447 (1905) (negligence is
11 ultimate question of fact to be determined by the jury); Grand
12 Trunk Ry. Co. of Canada v. Ives, 144 U.S. 408, 417 (1892) (jury
13 decides whether conduct of the parties in a particular case is
14 reasonable).  Both evidentiary facts and ultimate facts are
15 ordinarily the province of the jury.  See Grand Trunk at 417.

16      The reasonableness of an officer's conduct or belief is
17 an ultimate fact which is ordinarily a quintessential jury
18 question.  See Sloman v. Tadlock, 21 F.3d 1462, 1468 (9th Cir.
19 1994) ("evaluating the reasonableness of human conduct is
20 undeniably within the core are of jury competence"); id. ("the
21 jury is best suited to determine the reasonableness of an
22 officer's conduct in light of the factual context in which it
23 takes place"); Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)
24 ("reasonableness is traditionally a question of fact for the
25 jury"); Hopkins v. Andaya, 958 F.2d 881, 885 (9th Cir.
26 1992)("reasonableness of force is usually a question of fact for
27 the jury"); Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir.
28 1991); White v. Pierce County, 797 F.2d 812, 816 (9th Cir. 1986).

4

1        In the context of the qualified immunity inquiry,
2   however, it is the judge who must make the determination of the
3   ultimate fact of the reasonableness of the officer's belief.
4   Prior to its decision in <u>Saucier</u>, the Supreme Court suggested
5   that in the context of a motion for summary judgment based on
6   qualified immunity, the judge decides the ultimate fact of an
7   officer's objective reasonableness.  <u>See</u> <u>Hunter</u>, 502 U.S. at 228
8   (criticizing Ninth Circuit for declining to decide reasonableness
9   of officer's belief on summary judgment and stating that the
10  issue "should ordinarily be decided by the court long before
11  trial"); <u>see</u> <u>also</u> <u>Reynolds v. County of San Diego</u>, 84 F.3d 1162
12  (9th Cir. 1996) (interpreting <u>Hunter</u> to require resolution of
13  qualified immunity on summary judgment when underlying facts are
14  undisputed), overruled on other grounds, <u>Acri v. Varian Assoc.,</u>
15  <u>Inc.</u>, 114 F.3d 999 (9th Cir. 1997); <u>Act Up!/Portland v. Bagley</u>,
16  988 F.2d 868, 873 (9th Cir. 1993) (interpreting <u>Hunter</u> to hold
17  that reasonableness of officer's belief is a legal question to be
18  determined by the district court at the earliest possible stage).

19       <u>Saucier</u> affirms this rule, clarifying that while the
20  reasonableness of an officer's conduct on the merits of a Fourth
21  Amendment claim remains the province of the jury, the judge is
22  the trier-of-fact on the question of whether the officer could
23  have reasonably believed that his conduct was lawful in the
24  situation he confronted.  In applying <u>Saucier</u>'s test, the court
25  treats the threshold question of whether the facts alleged show
26  the officer's conduct violated a constitutional right as a jury
27  question, asking whether a reasonable jury could find a violation
28  on the facts alleged by plaintiff, resolving both evidentiary and

5

ultimate facts in the light most favorable to plaintiff.  See
Saucier, 121 S.Ct. at 2159 (characterizing threshold question as
whether a constitutional violation "could be found" or "could
have occurred" on the facts alleged by the plaintiff).

If the answer to this threshold question is
affirmative, the court decides "whether it would be clear to a
reasonable officer that his conduct was unlawful in the situation
he confronted."  Id. at 2156; see id. at 2160 (framing question
for court as whether a reasonable officer "could have believed"
that his conduct was "within the bounds of appropriate police
responses" according to settled law).  The court must decide this
question by construing the facts as the officer perceived them.
See id. at 2156 (refining question to the "situation [the
officer] confronted"); id. at 2158 ("Qualified immunity operates
... to protect officers from the sometimes 'hazy border between
excessive and acceptable force.'" (quoting Priester v. Riviera
Beach, 208 F.3d 919, 926-27 (11th Cir. 2000))).

While Saucier's approach relegates to the judge a
decision traditionally made by the jury, it best preserves the
concept of qualified immunity by assuring that the issue is
"decided by the court long before trial."  Hunter, 502 U.S. at
228; see Saucier, 121 S.Ct. at 2156  (privilege of qualified
immunity is "effectively lost if a case is erroneously permitted
to go to trial").  This approach is also justifiable because
judges may be perceived to be in a better position to gauge the
objective reasonableness of an officer's belief in a particular
situation based on settled law.  Cf. Illinois v. Gates, 462 U.S.
213, 238 (1983) (judges issue warrants based on their own

6

1 | practical, common sense determinations, including the "veracity"
2 | and "basis of knowledge" of persons providing information
3 | contained in affidavits); United States v. Leon, 468 U.S. 897,
4 | 914 (1984) (according "great deference" to a judge's
5 | determination of whether a particular affidavit establishes
6 | probable cause). By making the judge the trier-of-fact on
7 | summary judgment, Saucier's test prevents the question of
8 | immunity from being routinely placed in the hands of the jury.
9 | See Hunter, 112 S.Ct. at 228 (admonishing approach that
10 | "routinely places qualified immunity in the hands of the jury").

11 | With the foregoing standards in mind, the court
12 | considers plaintiff's allegations of excessive force and
13 | unreasonable search to determine whether defendants are entitled
14 | to qualified immunity.

15 | 1. Excessive Force Claim

16 | The reasonableness of the use of force under the Fourth
17 | Amendment is measured by three factors, including "the severity
18 | of the crime at issue, whether the suspect poses an immediate
19 | threat to the safety of the officers or others, and whether [she]
20 | is actively resisting arrest or attempting to evade arrest by
21 | flight." See Graham v. Connor, 490 U.S. 386, 396 (1989).
22 | Plaintiff here was ultimately charged and prosecuted for (1)
23 | resisting, delaying or obstructing a peace officer in the
24 | discharge of his duty, Cal. Penal Code § 148, and (2) battery
25 | against a peace officer, Cal. Penal Code § 243.

26 | Considering the facts in a light most favorable to
27 | plaintiff, the officers' conduct during her arrest could have
28 | constituted excessive force. Plaintiff did not resist her own

7

arrest, but intervened in her son's arrest after she watched an
officer violently throw him to the ground and repeatedly strike
him with a baton.  See People v. Soto, 80 Cal. Rptr. 627, 630
(1969)("A person who uses reasonable force to protect himself or
others against the use of unreasonable excessive force in making
an arrest is not guilty of any crime [under California law]."
(citing Cal. Penal Code, §§ 692, 694)).[2]  According to
plaintiff's account, the severity of her intervention was
minimal, limited to her yelling "stop, you're hurting him," and
grabbing an officer's shoulder.  (Carrasco Decl., ¶¶ 10-11).
Based on these alleged facts, a reasonable jury could find that
holding plaintiff to the ground by kneeling on her neck was
unreasonable force in response to her minor gestures.

         In proceeding to the second question under Saucier, the
court must decide the ultimate fact of whether the officer could
reasonably believe that his conduct was lawful in the situation
he confronted.  See Saucier, 121 S.Ct. at 2156, 2159-60
("question is what the officer reasonably understood his powers
and responsibilities to be, when he acted, under clearly
established standards").  The court determines objective
reasonableness from the facts as the officers perceived them.
See id. at 2156, 2158.

         It is well-settled that circumstances involving
resistance and a threat to the safety of officers may justify the

---

[2]    California Penal Code section 692 allows for "lawful
resistance to the commission of a public offense."  Cal. Penal
Code § 692.  Section 694 provides for resistance by third
persons, stating: "Any other person, in aid or defense of the
person about to be injured, may make resistance sufficient to
prevent the offense."  Cal. Penal Code § 694.

1 use of force.  See Graham, 490 U.S. at 396.  It is undisputed
2 that plaintiff tried to stop the officers' arrest of her son.
3 (See Carrasco Decl., ¶ 7).  From the officers' perspective, the
4 arrest of her son was lawful because he was intoxicated and
5 threatening to engage in a fist fight.  The force used in
6 restraining plaintiff's son was not unprovoked because he
7 resisted arrest.  (See Def.'s Statement of Undisputed Facts, ¶¶
8 2-4).  According to the officers, plaintiff's physical
9 interference threatened their safety and their ability to detain
10 her son.  (See id. at ¶¶ 6-7).

11        Further, plaintiff's own account does not specify the
12 amount of force applied by Officer Lee when he placed his knee on
13 her neck.  (See Carrasco Decl., ¶¶ 10-11).  Plaintiff has not
14 identified, nor is the court aware of "any case demonstrating a
15 clearly established rule prohibiting the officer from acting as
16 he did."  Saucier, 121 S.Ct. at 2160.  Thus, reasonable officers
17 in defendants' position could believe that their use of force was
18 lawful.  Defendants are entitled to qualified immunity on this
19 claim.

20        2.  Search Without a Warrant

21        Taken in a light most favorable to plaintiff, the facts
22 alleged show an unreasonable search in violation of the Fourth
23 Amendment.  See Saucier, 121 S.Ct. at 2156 (discussing threshold
24 question).  Searches inside the home without a warrant are
25 presumptively unreasonable under the Fourth Amendment.  See
26 Payton v. New York, 445 U.S. 573, 585 (1979) ("physical entry of
27 the home is the chief evil against which the working of the
28 Fourth Amendment is directed" (quoting United States v. United

9

1   States District Court, 407 U.S. 297 (1972)).  A warrantless
2   search may be upheld if the officers demonstrate both that they
3   had probable cause to enter the home and that exigent
4   circumstances excused the warrant requirement.  See United States
5   v. Johnson, 256 F.3d 895, 905 (9th Cir. 2001) (exigent
6   circumstance does not relieve probable cause requirement).  A
7   warrant is not required for a "quick and limited search of
8   premises, incident to an arrest and conducted to protect the
9   safety of police officers or others."  Maryland v. Buie, 494 U.S.
10  325, 327 (1990) (discussing the "protective sweep").

11       A reasonable jury could find that defendants did not
12  have probable cause to enter plaintiff's house.  Probable cause
13  exists if the known facts and circumstances would lead "a person
14  of reasonable caution to believe that the items sought will be
15  found in the place to be searched."  See Johnson, 256 F.3d at
16  905.  Defendants' stated purpose of the search "was to make sure
17  there were no other intoxicated minors on the premises, as the
18  supervising adult, the Plaintiff, was being taken to jail."  (Eng
19  Decl., ¶ 6).  However, defendants have not articulated with
20  factual specificity the basis for their belief that other
21  intoxicated minors remained inside plaintiff's house.  See id.

22       Even if defendants did have probable cause to enter
23  plaintiff's home, the circumstances do not compel a finding that
24  the warrantless search was a lawful protective sweep.  In Buie,
25  the Supreme Court held that the Fourth Amendment permits "a
26  properly limited protective sweep in conjunction with an in-home
27  arrest when the searching officer possesses a reasonable belief
28  based on specific and articulable facts that the area to be swept

10

1 harbors an individual posing a danger to those on the arrest
2 scene."  Buie, 494 U.S. at 1099-1100.  In defining the protective
3 sweep, "the Supreme Court emphasized the precautionary nature of
4 the search, the seriousness of the crime involved, and the need
5 for law enforcement to protect themselves by securing the scene
6 and preventing surprise attacks by co-conspirators."  United
7 States v. Furrow, 229 F.3d 805, 811-12 (9th Cir. 2000) ("A
8 specific exigent circumstance, the safety risk to officers
9 presented by unsearched premises, is what permits the warrantless
10 protective sweep."), overruled on other grounds, United States v.
11 Johnson, 256 F.3d 895 (9th Cir. 2001).  The present case,
12 however, did not involve an in-home arrest.  Defendants arrested
13 plaintiff outside her home and placed her in a police car before
14 they searched her house.  Defendants have not articulated the
15 basis for a need to protect themselves from surprise attacks.  By
16 entering the home, defendants actually placed themselves at a
17 greater risk of harm.

18      The Ninth Circuit has held that "the fact that an
19 arrest occurs outside the house does not invalidate an otherwise
20 lawful protective sweep."  United States v. Hoyos, 892 F.2d 1387,
21 1397 (9th Cir. 1989), overruled on other grounds, United States
22 v. Ruiz, 257 F.3d 1030 (9th Cir. 2001).  However, the Ninth
23 Circuit emphasized that the defendant in that case was arrested
24 as he was opening the door to his home: "the arresting officers
25 were within a few inches of persons who might be hiding with
26 drawn weapons on the other side of the door."  Id. at 1398.  In
27 addition, the officers had specific knowledge from prior events
28 that at least five men involved in the crimes, which included

1 conspiracy to distribute cocaine, were not yet in custody. The
2 Ninth Circuit recognized that certain crimes, such as cocaine
3 distribution, carry the risk that hiding suspects will be armed.
4 See id. at 1397 (citing United States v. Castillo, 866 F.2d 1071,
5 1079-781 (9th Cir. 1989)). Therefore, when one officer saw
6 suspects running back into the house, the officers had a specific
7 basis for their belief that the defendant's alleged conspirators,
8 who were likely armed, remained inside. See id. at 1396.

9 Defendants here have not shown similar proximity to
10 potential danger, or a "reasonable, individualized suspicion" of
11 danger to themselves or others from suspects inside the house.
12 See Hoyos, 892 F.2d at 1396. The possible presence of
13 intoxicated minors does not carry the same risk of harm as crimes
14 involving the traffic of narcotics. Thus, a reasonable jury
15 could find a constitutional violation on the facts alleged by
16 plaintiff.

17 As discussed above, the second consideration under
18 Saucier concerns the objective reasonableness of an officer's
19 belief that his conduct was lawful according to settled law. As
20 the ultimate fact-finder on summary judgment, the court finds
21 that no reasonable officer could believe that mere precaution
22 warranted a search of the home after plaintiff was arrested
23 outside the home for a crime committed outside the home. Any
24 mistake by the officers regarding the legality of the search
25 would not be reasonable in the absence of specific facts
26 suggesting that individuals inside the house posed a danger to
27 officers outside the house. Therefore, defendants are not
28 entitled to summary judgment based on qualified immunity with

12

1 respect to plaintiff's claim for an unreasonable search.

2          B.   Municipal Liability

3               To establish liability against the City of Vallejo
4 under section 1983, plaintiff must show that an official policy
5 or custom was the moving force behind the alleged unreasonable
6 search, or that the City's alleged failure to train or fault in
7 hiring amounted to deliberate indifference to plaintiff's
8 constitutional right to be free from such searches.  See Board of
9 County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 1387-88
10 (1997)("municipality may not be held liable under § 1983 solely
11 because it employs a tortfeasor"); Los Angeles Police Protective
12 League v. Gates, 907 F.2d 879, 889 (9th Cir. 1990)(citing Monell
13 v. Department of Social Serv., 436 U.S. 658, 690-94 (1978)); City
14 of Canton, Ohio v. Harris, 489 U.S. 378, 338 (1989).  Plaintiff
15 may establish a municipal custom by pointing to specific facts
16 demonstrating a "permanent and well-settled," widespread practice
17 by the city.  See Thompson v. City of Los Angeles, 885 F.2d 1439,
18 1444 (9th Cir. 1989).

19               Here, plaintiff has not pointed to any evidence of a
20 municipal policy or custom in connection with her alleged
21 constitutional deprivations.  The only evidence offered by
22 plaintiff is state court documents purporting to show that the
23 California Superior Court found Fourth Amendment violations in
24 the search of other homes by Vallejo police officers.  However,
25 the court can almost take judicial notice that it would find such
26 examples on the Superior Court dockets of any major county such
27 as Solano County.  If such information were sufficient to
28 establish a city custom, it would result in wide-spread City

13

1  liability contrary to the principles of <u>Monell</u>.  Therefore,
2  plaintiff's showing, without more, cannot support the existence
3  of a practice that is "so permanent and well-settled as to
4  constitute a custom with the force of law."  <u>Adickes v. S.H.</u>
5  <u>Kress & Co.</u>, 398 U.S. 144, 168 (1970).

6        Plaintiff has not pointed to any evidence suggesting
7  that the city failed to train its officers, or that such failure
8  is attributable to deliberate indifference.  <u>See</u> <u>City of Canton</u>,
9  489 U.S. at 338.  Nor has plaintiff pointed to any evidence
10 suggesting that a municipal hiring decision reflected deliberate
11 indifference that a particular officer was highly likely to
12 engage in an unreasonable search of plaintiff's home.  <u>See</u> <u>Bryan</u>
13 <u>County</u>, 520 U.S. at 412.  Because there are no triable issues
14 regarding the circumstances that could create liability against
15 the City of Vallejo, the City is entitled to summary judgment.

16        C.  <u>Supervisory Liability</u>

17        Plaintiff alleges that defendant Sergeant Mortenson is
18 liable for the alleged unconstitutional search as the supervisor
19 on the scene at plaintiff's house.  "Supervisors can be held
20 liable [under section 1983] for: 1) their own culpable action or
21 inaction in training, supervision, or control of subordinates; 2)
22 their acquiescence in the constitutional deprivation of which a
23 complaint is made; or 3) conduct that showed a reckless or
24 callous indifference to the rights of others."  <u>Cunningham v.</u>
25 <u>Gates</u>, 229 F.3d 1271, 1292 (9th Cir. 2000) (citing <u>Larez v. City</u>
26 <u>of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991)).  Sergeant
27 Mortenson's presence on the scene is sufficient to create a
28 triable issue concerning his liability as a supervisor.  The

14

1 court will accordingly deny defendants' motion on this ground.

2       D.   State law claims

3            1.   False Arrest/Imprisonment

4            Defendants argue that they are entitled to summary
5 judgment on plaintiff's claim for false arrest and imprisonment
6 because her arrest was lawful as a matter of law.  See Bell v.
7 State of California, 63 Cal. App. 4th 919 (1998) ("Imprisonment
8 based on a lawful arrest is not false and is not actionable in
9 tort.").

10           Under California law, an officer may arrest a person
11 without a warrant when the officer "has probable cause to believe
12 that the person arrested has committed a public offense in the
13 officer's presence."  Cal. Penal Code § 835(a)(1).  "Cause to
14 arrest exists when the acts known to the arresting officer would
15 lead a person of ordinary care and prudence to entertain an
16 honest and strong suspicion that the person arrested is guilty of
17 a crime."  People v. Price, 1 Cal. 4th 324, 410 (1991).

18           The parties dispute the circumstances of plaintiff's
19 arrest.  According to plaintiff, she was arrested after she tried
20 to stop the officers' unreasonable use of force on her son.  See
21 People v. Soto, 80 Cal. Rptr. 627, 630 (1969); Cal. Penal Code,
22 §§ 692, 694.  Because a person who uses reasonable force to
23 protect another against the use of unreasonable excessive force
24 in making an arrest is not guilty of any crime under California
25 law, a reasonable juror could find that the officers did not have
26 cause to arrest plaintiff.  See Soto, at 630; Cal. Penal Code, §§
27 692, 694; see also supra note 1.  Therefore, summary judgment on
28 plaintiff's claim for false arrest and imprisonment is not

                                15

1 proper.

2           2.   Malicious Prosecution

3           Plaintiff offers no evidence creating a triable issue
4 on her claim for malicious prosecution under either federal or
5 state law.[3]  Plaintiff merely argues that "defendants made
6 material representations to the jury in [her] criminal trial."
7 (Opp'n at 15:11-13).  However, a police officer's testimony at
8 trial cannot form the basis for a claim for damages under section
9 1983.  See Briscoe v. LaHue, 460 U.S. 325, 335-36 (1983).
10 Moreover, plaintiff has not pointed to any evidence supporting a
11 reasonable inference that defendants' acted with malice in
12 instituting criminal proceedings against her, or that plaintiff
13 was prosecuted on the basis of false statements made by the
14 officers.  See Usher v. City of Los Angeles, 828 F.2d 556, 562
15 (9th Cir. 1987) (citing Singleton v. Perry, 45 Cal. 2d 489, 494
16 (1955)).  Therefore, defendants are entitled to summary judgment
17 on this claim.

18           3.   Battery/Assault

19           Defendants argue that they are entitled to summary
20 judgment on plaintiff's claim for assault and battery because
21 their contact with plaintiff was lawful.  However, the evidence
22 presents triable issues concerning the reasonableness of
23 defendants' use of force.  (See Pl.'s Ex. D, Attached to Carrasco
24 Decl.) (photos purportedly depicting bruises to plaintiff's neck
25 that were caused by defendants).  Because a reasonable juror

26

27       [3]    The complaint does not indicate whether plaintiff's
28 claim for malicious prosecution is based on California law or the
   Fourteenth Amendment.

16

1  could conclude that defendants' use of force was unreasonable,
2  and thus unlawful, summary judgment on plaintiff's claim for
3  assault and battery is not proper.

4      4.   Emotional Distress

5      Defendants are not entitled to summary judgment on
6  plaintiff's claims for negligent and intentional infliction of
7  emotion distress because triable issues remain concerning the
8  nature and severity of defendants' conduct.

9      E.   Plaintiff's Claim Against Corporal Dane Neilson

10     Defendants argue that plaintiff "has no cause of
11 action" against Corporal Dane Neilson based on his conduct in
12 striking her son because her son is not a party to this action.
13 However, plaintiff's allegation that Corporal Neilson struck her
14 son with a baton three or four times in her presence is the basis
15 of her claims for negligent and intentional infliction of
16 emotional distress.   The court will accordingly deny defendants'
17 motion to dismiss Corporal Neilson.

18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

17

1    IT IS THEREFORE ORDERED that defendants' motion for
2 summary judgment on the basis of qualified immunity be, and the
3 same hereby is, GRANTED with respect to plaintiff's claim for
4 excessive force, and DENIED with respect to plaintiff's claim for
5 an unreasonable search.

6    IT IS FURTHER ORDERED that defendants' motion for
7 summary judgment with respect to plaintiff's claims against the
8 City of Vallejo be, and the same hereby is, GRANTED.

9    IT IS FURTHER ORDERED that defendants' motion for
10 summary judgment on plaintiff's claim for malicious prosecution
11 be, and the same hereby is, GRANTED, and plaintiff's Eighth Cause
12 of Action is accordingly dismissed.  All other motions are
13 DENIED.

14 DATED: September 6, 2001

15

16                              WILLIAM B. SHUBB
17                              UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

18

United States District Court
for the
Eastern District of California
September 7, 2001

* * CERTIFICATE OF SERVICE * *

2:00-cv-01968

Carrasco

v.

City of Vallejo

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  September 7, 2001, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Tim Allen Pori                          SH/WBS
Low Offices of Tim A Pori
521 Georgia Street
Vallejo, CA  94590

Alesia Francine Jones-Martin
Vallejo City Attorneys Office
City Hall
555 Santa Clara Street
P O Box 3068
Vallejo, CA  94590

Jack L. Wagner, Clerk

BY: _____
          Deputy Clerk